AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

SUBJECT DEVICES #1 to #10 Recovered from 3619 Charlotte Mill Drive, Moraine Ohio Currently Stored at the DEA Dayton Resident Office, Beavercreek, OH

Case No. 3:19 mj 672

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the \_\_\_\_Southern\_\_\_\_ District of \_\_\_\_Ohio\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g) & 924(a)(2) | Possession of a Firearm by a Felon |
| 21 U.S.C. 846 & 841(a)(1) | Possession with intent to distribute and to distribute a controlled substance and conspiracy to do the same; Use of a Communication Facility |
| 21 U.S.C. 843 | |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph Reder, Special Agent Drug Enforcement Admin.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/19/2019

*Judge's signature*

City and state: Dayton, OH

Hon. Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Joseph Reder, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent with the U.S. Drug Enforcement Administration, and have been so employed since January 2006. I have completed basic law enforcement training at the DEA Academy in Quantico, Virginia and have received extensive training in the investigation of offenses involving controlled substances. For the past 14 years, I have been assigned to the DEA Cincinnati Resident Office, working on complex conspiracy investigations. During that time, I have participated in multiple investigations, as the case agent and assisting other agents. During that time, I have further had the opportunity to interview drug users and drug traffickers and become familiar with the various techniques employed by these subjects to use, distribute, and transport narcotics. On October 31, 2016, I was assigned as a Task Force Officer to the Hamilton County Heroin Task Force and on November 9, 2016, I was sworn in as a Deputy Sheriff with the Hamilton County Sheriff's Office in Cincinnati, Ohio. I spent approximately 18 months on the Heroin Task Force and in that time worked on numerous drug overdose death investigations associated with methamphetamine, heroin, cocaine, fentanyl, carfentanil and other illicit narcotics.

4. The facts in this affidavit come from my personal observations, my training and experience, the review of certain records, as well as information obtained from other detectives and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

### INDENTICATION OF THE DEVICES TO BE EXAMINED

5. Along with other agents and officers, I am currently involved in an investigation of violations for 18 U.S.C. § 922(g) (Possession of a Firearm by a Felon); 21 U.S.C. §§ 846 and 841(a)(1) (Possession to Distribute a controlled substance); 21 U.S.C. § 843 (Use of a Communication Facility) committed by Jovan House. This Affidavit is submitted in support of an Application for a search warrant for the following:

    a. A blue Samsung Galaxy 9 phone, IMEI number: 356628090305218 (hereinafter referred to as "**SUBJECT DEVICE-1**")

    b. A black Samsung Galaxy 9 phone, FCC ID number: A3LSMG965U (hereinafter referred to as "**SUBJECT DEVICE-2**")

    c. A silver Samsung Galaxy S8 phone, FCC ID number: A3LSMG955U (hereinafter referred to as "**SUBJECT DEVICE-3**)

    d. A pink Apple IPhone, FCC ID number: BCG-E3085A (hereinafter referred to as "**SUBJECT DEVICE-4**")

    e. A black ZTE phone, serial number: 328C65970FAF (hereinafter referred to as "**SUBJECT DEVICE-5**")

    f. A grey LG phone, serial number: 804VTLZ040008 (hereinafter referred to as "**SUBJECT DEVICE-6**")

    g. A red Samsung phone, FCC ID number: A3LSCHU450 (hereinafter referred to as "**SUBJECT DEVICE-7**")

    h. A black LG phone, serial number: 810CYXM249826 hereinafter referred to as "**SUBJECT DEVICE-8**")

    i. A blue Samsung phone, number: 80A9BE17 (hereinafter referred to as "**SUBJECT DEVICE-9**")

    j. A grey Coolpad phone, FCC ID number: R38YL3632A (hereinafter referred to as "**SUBJECT DEVICE-10**")

6. SUBJECT **DEVICE-1** through **SUBJECT DEVICE-10** are currently in the custody and control of the Drug Enforcement Administration Dayton Resident Office, 3821 Colonel Glenn Highway, Beavercreek, Ohio 45324. In my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT DEVICES** first came into the possession of the Drug Enforcement Administration Dayton Resident Office. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. In April 2017, the DEA Dayton Resident Office developed information from a confidential source ("CS-1") that HOUSE was distributing kilograms of heroin, fentanyl, and cocaine in the Dayton, Ohio area. The information CS-1 has provided about HOUSE has been

2

credible and corroborated in part through independent investigation. CS-1 has been working for law enforcement for consideration in an open manner.

8. From mid-July 2019 to the end of October 2019, CS-1 made a series of phone calls to HOUSE at (937) 607-4987. CS-1 made five controlled purchases of fentanyl from HOUSE between mid-July 2019 and the end of October 2019.

10. As a result of this investigation, U.S. Magistrate Judge Sharon L. Ovington issued a search warrant for 3619 Charlotte Mill Drive, Moraine, Ohio and 1010 Angier Drive, Dayton, Ohio on November 1, 2019. The affidavits for these search warrants (3:19-mj-650 and 3:19-mj-649) are incorporated by reference here.

11. On November 4, 2019 at approximately 10:00 a.m., the DEA Dayton Resident Office executed the search warrant at 3619 Charlotte Mill Drive, Moraine, Ohio. Jovan House was inside 3619 Charlotte Mill Drive.

12. A search of 3619 Charlotte Mill Drive was completed and numerous items of evidence were recovered. An unknown quantity of United States Currency and a Smith and Wesson handgun, serial number FWM4295 with 14 live rounds in the magazine were located in the master bedroom top dresser drawer. Two sandwich bags with crack cocaine were located in master bedroom closet in jacket pocket. A plastic bag with crack cocaine was located in corner cabinet in kitchen. A Smith and Wesson handgun, serial number RBF6480 with 15 live rounds in the magazine was located in basement bedroom under mattress. A blue Samsung Galaxy 9 phone (**SUJECT DEVICE-1**) was located in basement by television. A black Samsung Galaxy 9 phone (**SUBJECT DEVICE-2**) was located on the living room coffee table. A silver Samsung Galaxy 8 (**SUBJECT DEVICE-3**), was located in basement by television, a pink Apple IPhone (**SUBJECT DEVICE-4**) was located in the master bedroom top dresser drawer, a black ZTE phone (**SUBJECT DEVICE-5**), a grey LG phone (**SUBJECT DEVICE-6**), a red Samsung phone (**SUBJECT DEVICE-7**), a black LG phone (**SUBECT DEVICE-8**), a blue Samsung phone (**SUBECT DEVICE-9**) and a grey Coolpad phone (**SUBJECT DEVICE-10**) were located in a kitchen cabinet.

13. The Dayton Police Department Narcotics Unit executed the search warrant at 1010 Angier Drive, Dayton, Ohio. Officers recovered a Glock .30 handgun and an M&P .40 caliber handgun. Officers also found a blue top clear plastic baggie containing suspected narcotics from the garage. These narcotics weighed 283 grams. There were other small amounts of suspected narcotics including a bag of marijuana, clear plastic bag containing narcotics, clear plastic baggie of white pills, a white plastic bag with suspected narcotics.

14. Following this incident, I reviewed the criminal history for House and I learned the following: Jovan House was convicted of possession of cocaine on September 16, 2003 in the Common Pleas Court of Montgomery County, Ohio, case number 2003CR02578. Jovan House was convicted of possession of cocaine on October 16, 2001 in the Common Pleas Court of Montgomery County, Ohio case number 2001CR00588. Jovan House was convicted of possession of cocaine on January 15, 1999 in the Common Pleas Court of Montgomery County, Ohio, case number 1998CR01210.

15. JOVAN HOUSE was arrested after the completion of the search warrants. HOUSE was read his *Miranda* warnings and waived them. HOUSE relayed that that the suspected cocaine base and firearms recovered from Charlotte Mill Drive, Moraine, Ohio were his. HOUSE then used **SUBJECT DEVICE-1** to make recorded calls concerning drugs in the presence of DEA Agents.

16. I believe that **SUBJECT DEVICES** will contain the information listed above based upon law enforcement's surveillance of HOUSE, controlled purchases made from HOUSE, and HOUSE's personal statements. It appeared that HOUSE had been in communication with those in his organization. I know from my training and experience investigating drug trafficking, along with purchasing drugs in an undercover capacity, that cell phones are commonly used by drug traffickers to facilitate selling drugs. It is common for drug traffickers to have numerous cell phones in their possession which often contain phone numbers of the drug buyers. The cell phones often contain phone call history with drug buyers, text message conversations setting up drug transactions, photographs of illegal narcotics and/or firearms, and other miscellaneous items relating to drug trafficking.

17. Additionally, based on my training and experience, individuals who commit gun violations commonly take photographs of themselves and others with the firearms. The **SUBJECT DEVICES** recovered in this matter are all capable of taking and storing photographs.

18. The **SUBJECT DEVICES** are currently in the possession of the Drug Enforcement Administration Dayton Residence Office, In my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which its contents are, to the extent materially to this investigation, in substantially the same state as they were when the **SUBJECT DEVICES** first came into possession of the DEA. The only exception is SUBJECT DEVICE-1 was used to make recorded calls.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments,

and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA

5

users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

    h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, I know that **SUBJECT DEVICE-1, SUBJECT DEVICE-2, SUBJECT DEVICE-3, SUBJECT DEVICE-4, SUBJECT DEVICE-5, SUBJECT DEVICE-6, SUBJECT DEVICE-7, SUBJECT DEVICE-8, SUBJECT DEVICE-9, and SUBJECT DEVICE-10** have capabilities that allow them to serve as a wireless telephone and digital camera, along with further capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

6

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

7

24. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Joseph Reder
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on November 19, 2019:

HON. SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is the following:

1) A blue Samsung Galaxy 9 phone, IMEI number: 356628090305218 (hereinafter referred to as "**SUBJECT DEVICE-1**")

2) A black Samsung Galaxy 9 phone, FCC ID number: A3LSMG965U (hereinafter referred to as "**SUBJECT DEVICE-2**")

3) A silver Samsung S8 phone, FCC ID number: A3LSMG955U (hereinafter referred to as "**SUBJECT DEVICE-3**")

4) A pink Apple IPhone, FCC ID number: BCG-E3085A (hereinafter referred to as "**SUBJECT DEVICE-4**")

5) A black ZTE phone, serial number: 328C65970FAF (hereinafter referred to as "**SUBJECT DEVICE-5**")

6) A grey LG phone, serial number: 804VTLZ40008 (hereinafter referred to as "**SUBJECT DEVICE-6**")

7) A red Samsung phone, FCC ID number: A3LSCHU450 (hereinafter referred to as "**SUBJECT DEVICE-7**")

8) A black LG phone, serial number: 810CYXM249826 (hereinafter referred to as "**SUBJECT DEVICE-8**")

9) A blue Samsung phone, number: 80A9BE17 (hereinafter referred to as "**SUBJECT DEVICE-9**")

10) A grey Coolpad phone, FCC ID number: R38YL3632A (hereinafter referred to as "**SUBJECT DEVICE-10**")

**SUBJECT DEVICE-1** through **SUBJECT DEVICE-10** are currently located at the DEA Dayton Resident Office, 3821 Colonel Glenn Highway, Beavercreek, Ohio 45324.

This warrant authorizes the forensic examination of **SUBJECT DEVICE-1** through **SUBJECT DEVICE-10** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the **SUBJECT DEVICES** described in Attachment A that relate to violations of 18 U.S.C. § 922(g) (Possession of a Firearm by a Felon); 21 U.S.C. §§ 846 and 841(a)(1) (Possession to Distribute a controlled substance and conspiracy to do the same); 21 U.S.C. § 843 (Use of a Communication Facility) and involve Jovan House since April 2017, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording Jovan House's schedule or travel from April 2017 to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.